If we agree with you and you prevail on the first case, then you would automatically prevail on the rest of the Dakota issue, is that right? I suppose you should assume that we don't. Let's assume it's before us. Can you draw this line or is it broader than that? That's an interesting question. I do believe, though, it revolves around the principles of claim preclusion. In the end, latches under this court's precedent is patent specific. In Nike v. Gillig, in Stark, Myers v. Brooks, let me just make sure that at least you're hearing the same question that I think I just heard. If you win in the case we just finished arguing so that there is no latches, then you do, correct, automatically win this case because there can't be a claim preclusion on a judgment that's just been reversed. I would agree with that, Your Honor. So we should assume for purposes of this argument that you've lost the first case. Yes. And, Your Honor, but this also illustrates the reasons why claim preclusion shouldn't apply because, as this court stated, in precedent, the Kearns case with Judge Newman and the Stark case, each patent is its own distinct shows and action. Each patent has its own meets and bounds, and those meets and bounds are defined by the claims. And as this court stated in Superior, citing Acumit, when you look at issues of claim preclusion and issues of patent law, well, there are two principles. One, you look to general principles of res judicata, claim preclusion, for the general principles. When it comes to an issue of substantive patent law, then you look at the patent law. Now, why was the district court wrong in saying that there was an obligation to put all of this together in one case? They arise out of the same operative facts. I think those are the words of art. And to separate them by six months was curious. Well, first, Your Honor, the reason why the cases were separated by six months is because we were actually doing the due diligence to bring the complaint to satisfy our obligations to show that Mr. Mahmoud was, in fact, and should have been, in fact, a named inventor on the 588, 464, and 457 patents. The sole reason for not filing the lawsuit in August was that we needed to get that suit filed. We knew we would be facing a last defense from RIM. So we couldn't have prolonged that period, so we filed the 694 case. We told RIM there are other patents in the portfolio that we're taking a look at, and we looked at those patents deeply, prepared the analysis, and filed that suit, as you said, Your Honor, six months later. But your initial complaint also said there are other patents, and the trial judge seemed to be quite perturbed by this separation. But, Your Honor, I agree that's what the district court was perturbed by, but I believe that's relying on an interpretation that's wrong in the law, a misapplication of the law. If you look at this court's decision in Superior, thus, this court looks to Federal Circuit precedent to resolve underlying issues of substantive patent law, such as the operative facts involved in a claim for patent infringement. The operative facts for a claim for patent infringement are governed by patent law, and the operative facts underlying a claim for patent inventorship are what are the claims, what are the claim elements, when did the patent issue, what are the facts underlying claim construction, what were the purported inventor's contribution or contributions, is this a case of sole or joint inventorship, what is the corroborating evidence, what are the contributions and roles of the other named inventors, what is the prosecution history, what happened in the patent office. These are all operative facts that underlie a claim for patent infringement and is governed by Federal Circuit patent law and actually supports this court's conclusion that each patent is distinct and independent and represents its own shows or cause in action. Can I ask you this question in the infringement context? Have we said that we dealt with the following scenario? Patentee has one patent. Defendant has two products. Patentee sues for infringement of product number one. Product number two is already out there. Is there a claim splitting problem if the plaintiff sues the defendant for product number two in a separate suit on the same patent? Your Honor, there is actually precedent to this. The start case is one where there were different products at issue. And if you look at Foster v. Halco, it's interesting, Your Honor. Foster v. Halco at 947 Fed Third at 479 says, We are unpersuaded that an infringement claim for purposes of claim preclusion embraces more than the specific devices before the court in the first suit. So if you have one patent and two products and those products are different, then there is no claim preclusion as to the second suit as to that different product. This is consistent with Federal Circuit precedent on that issue. And there is no rationale for finding in the context of an inventorship case that a patent is all jumbled together. In fact, in the start case, The inventorship addresses the question of patent, whereas the infringement claim application to a particular product addresses the limitations in the claim and the elements of the product. And therefore, it's a unique case. But the inventorship with regard to a patent is not a unique question, as long as it's the same inventor and the same patent. Your Honor, each patent is different. Your Honor, in the start case, this court, in fact, took judicial notice that patents are different. Each patent is different. As applied to a particular product. That's a separate issue in every case. Well, no, Your Honor. I believe that that notion exists irrespective of patent infringement or inventorship. A patent is its own distinct piece of property. This is what the court stated in terms. The relationships we're talking about. Right, Your Honor. And just as an accused device is defined by its structure, for example, a patent is defined by its claims. The claims set forth the meets and bounds. And once those meets and bounds are established, then you have to look at the contributions that are purported to have been made in that inventorship situation to determine whether the person is an inventor or not. That raises an interesting question in my mind. When we talk about these things, are we talking about the invention that underlies the patent, or are we talking about the particular pieces of the invention that happen to appear in the claims? Your Honor, in the sense that we're talking about, when we talk about inventorship, are we talking about the underlying invention, parts of which or some application of which appears in the specific claims in a patent, or are we talking about only those parts of the invention that are actually claimed in the patent? We're talking about what is claimed in the patent. Always. Always, Your Honor. We never talk about the underlying invention. Because the underlying invention... We have the same problem in our 101 jurisprudence. It's always puzzling to me as to what we mean when we talk about an abstract idea. I don't know whether we're talking about the underlying invention or whether we're talking about just the formulation of it that appears in a claim. Put that aside. That's just a sidebar. In your case, though, your argument is that the inventorship issue only goes to the particular parts of an invention that happen to be put forth in a claim in a patent, not the underlying invention that appears in the written description and in all the other materials that are part of the overall patent document. You're right, Your Honor. Because what is... I'm right? Which way am I? You're right. Focus on the claims. Because when you ask what is the invention, that's a question that has many, many broad parameters to it, and it's not defined unless you look at the claims. The claims define... The written description doesn't define what the invention is. Exactly, Your Honor. The claims define what the invention is because the specification can be broad, and the specification is meant to teach persons ordinary skill in the art. Careful. Specification includes the claims. You don't mean that, do you? No. Exactly. The specification must support the claims, but the claims define what is claimed. I mean, there are various doctrines that go... I mean, if you consider the dedicated but not claimed doctrine, you could have a broad specification, and then you go to your claims, and you don't claim what you actually recite in your specification. You go narrow. The more narrow claims, claims define an invention. And this court said in Karatek... Can I ask, Counsel? You don't dispute, or do you, the notion that there can be some factual differences among the relevant facts between two cases and yet one would be subject to claim preclusion by the other? No, there can be situations... Exactly, Your Honor. So, for example, in the scenario I was describing, if the products are close enough, whatever that means, then you could have claim preclusion. Conceding the correctness of your proposition that an inventorship dispute does turn on the claims, why should it not equally be true that if the claims are sufficiently similar, though obviously not identical, between patents, and the underlying... The great bulk of the facts are, what did your client do, 1994, 1995? What did he communicate to RIM? What did RIM get from him that it didn't either independently think of or get from prior art? The litigation is overwhelmingly about that with, yes, real but nevertheless small differences in mapping whatever his contribution was, non-prior art contribution that they didn't separately invent, to the language of particular claims. I understand that's what the district court was getting at here, not denying that there are differences claim to claim, but that, relatively speaking, they are small compared to what is common. Your Honor, the district court did not make that analysis at all. The district court found that the invention can be broader than the patent claimed. There was no analysis, for example, of comparing the message status change indicator, which is a feature at issue in the 588 patent, which only issued in 2008, but there was no comparison of that claim element to the transparency element in 694 patent, nor was there a comparison between the replicating data items in real time and mirroring data, which are at issue with the 464 and the 457 patents. But, Your Honor, in Foster v. Halco, that case was actually remanded back for determination on the point that you just mentioned in the patent infringement context. Were these products basically the same? In this case, that analysis was not done, but I submit, Your Honor, it doesn't need to be done because these patents, the claim elements themselves, are different. These patents are different under the law. Can I ask a... When you were before the district court, did you make an argument that mapped out these differences claim to claim, or was your argument more the legal one? If it's different patents, go home, can't be claimed. During oral argument in our briefs, our point has always been that these patents are distinct. They're separate. They're different. They're just different facts. They have different operative facts. Did you map out and explain and identify the differences so that, for example, you said Mr. Mahmoud in 1994 told RIM four different ideas. One of them appears in the 694, another appears in the 588, and here's how. Your Honor, we did spell that out because, in fact, we talked about how the 588 patent has message status change indicator. We itemized and looked at the elements that were at issue with respect to Mr. Mahmoud's contributions as to each patent. And, in fact, the very fact that you... the factual notion that you just mentioned occurred. Mr. Mahmoud actually provided a list of elements that he believed he invented to RIM in 2004. And RIM, this goes back to the first case, but that's when RIM looked at those elements and the inventorship issue. Can I ask you another question? You have not here, and I think if I remember from what I saw in the district court, you did not in the district court ever say, ever make the argument, if we're wrong about all of our counts alleging either sole or co-inventorship of the issued patents, nevertheless, we're right about the applications. And that got me thinking, I think, under the cases that you yourself cite, your 256 claim is actually premature as to the applications. But, in which case, I think that the right claim preclusion law is there can't be claim preclusion as to that. But, for the life of me, I think you flat out waived that. Your Honor, with respect to the patent applications, under Hoare v. Chu, there is no patent inventorship claim until those patents are issued. You never argued to the district court, and I don't think you've argued in your brief here, that if there is claim preclusion as to the issued patents, nevertheless, there is not claim preclusion as to the two yet-unissued applications. Well, Your Honor, if I may? Answer the question, please. Your Honor, if I may, that's because of this court's precedent in Hoare v. Chu. There are no claims as they exist now. These are pending patent applications. There is nothing to correct. There is no 256 action as to those pending patent applications. There was nothing to appeal because this court's precedent was clear on that issue. Okay. Thank you, Mr. McNamara. If it pleases the Court again, my name is Paul Keller with Allen & Overy, representing RIM. The issue you've heard and an issue in this second appeal is the basis of dismissing the second case that the appellant has brought against RIM on the basis of res judicat. Although there is no dispute at all that at the time he brought, that appellant brought his second case, he knew of his claims at the time he filed his first. Although there is no dispute that all of the information that the appellant relies upon on what he contributed to RIM was provided a decade and a half earlier in 1995 and 1996. And although there is no dispute that all of the allegations that are at issue in both cases relate to RIM's misuse of that information, appellant is still suggesting that the application of res judicat on the second case was somehow in error. But he would be right, wouldn't he, if the information was, say, of two radically different things. Two radically different ideas and one of them appears in the 694 and one of them appears in one of the other patents, one of the continuation in part patents that's in the family. Why would those be considered part of the same cause of action, the same set of operative transactional facts? It's somewhat difficult to answer your question because of deciding what radical actually means. This is the challenge with res judicata. Res judicata is claim preclusion. I guess just focusing on, you opened by saying he knew everything at the same time and he filed separate suits. That by itself, that's not enough for claim preclusion. There has to be something about the relationship between these several things he knew which I guess goes to the question that I was discussing about whether there are really distinct inventions, assertive inventions that he said he had and that he communicated to RIM and that appeared in different patents within this overall family. To put it in, again, I think the facts address that question best. In this case, you have, we're talking a lot about products and in the patent infringement case, how you can assert one patent against one product and it wouldn't be res judicata to assert that same patent against another product even though you knew about that second product at the time of filing the first case. In this case, there is only one product at issue. It is the page mail product. If this was a case where the appellant had provided page mail in 95, 96 related to telephone technology or email technology and then a car in 98 and 99 and something else, a teapot in 2005. Res judicata, it would be difficult to apply res judicata. I'm not quite sure of the relevance of the product that you say you refer to page mail. Your BlackBerry product, I would bet, has 100 inventive ideas in it. Maybe his page mail product did also and the co-inventorship assertion or even derivation has to do with the ideas that he may have communicated to you and that you then put into different claims and different patents. Potentially, that's right, Your Honor. Certainly by the nature, it is very possible and I think it is our contention that when he provided page mail to RIM in 95 and 96, that allegedly had a number of different inventions in it and addressing the vagaries of invention but a number of different ideas that RIM allegedly misused in putting into a particular patent family but in one patent family. And they're suggesting... Right, that's why I referred to continuation of parts. Yeah, okay. Well, two of the patents that I have here are continuations, not continuation of parts. So I think that's... I understand your distinction. But now the question becomes, okay, we know that... We've all known that separate patents are separate chosens in action. Unjust enrichment is a separate chosen action. Breach of contract is a separate chosen action. Conversion is a separate chosen action. The fact that they're separate chosens in action doesn't answer the question for us. We have to look... Resolucata requires us to look. When we brought the first case, what should they or could they have brought then that related to the same transaction or series of transactions? And if they fail to address it when they should have, it's barred by subsequent cases. There was a question about the scope. I think Your Honor Newman brought up the scope of the first complaint which really wasn't properly addressed. The district court made crystal clear that the first complaint didn't just address the 694 patent but brought the entire patent family of the 694 family in play. The prayers for relief, and there's two of them that are at issue here, the first prayer for relief asked for the district court to change title of the 694 patent as well as to any and all other patents to which RIM owns that the court feels the appellant is entitled to. That's not just about the 694 patent. And frankly, that's not even just about the 694 patent family. It's about any RIM patent that RIM owns that the court finds that there was some contribution by Mr. Mahmood that the court will now have to change it versus the 256. Well, one could read that somewhat more narrowly. I mean, you put in in the prayer for relief something broad enough that you more than readily encompass everything that you might be entitled to. But it could well be that if the first case is about push technology, idea number one, it appears in the 694, that there are 12 of the rest of the 694 family that incorporate that in a pretty central way in different claims and you might maybe get an injunction as to them too. But you wouldn't necessarily get an injunction as to the rest of the 694 family that incorporated one of the different ideas that is not in the 694. Your Honor, I think that's probably right and it's actually something that the appellant was actually concerned about because when it drafted its complaint, the first prayer for relief can be interpreted that way, but the second prayer for relief cannot. The second prayer for relief seeks permanent injunctive relief in the form of an order requiring RIM to assign any patents and pending patent applications relating to or claiming priority to the 694 patent that contain claim elements of which Mr. Mahmoud conceived and reduced the practice. He has brought all of his allegedly inventive concepts that he ever brought to RIM at issue in the very first case. Can I go back and maybe ask you the same question I asked him? How specific was the set of presentations, I use that broadly, oral, written, whatever, how specific did they get about enumerating the different ideas that he said he brought to RIM in 1994, 1995 and trying to explain how idea number one appears in these patents and idea number two in others? I had the sense just from what I saw of the record that the argument took place at a much higher level of generality than that. I think the best source to answer that question is the second complaint where the second complaint does talk about how this particular patent in a sentence form relates to this general technology and the other patents relate to this general technology. But in terms of identifying now how does that make these different or how do these not stem from the same operative facts or how does this make it not what they provided back in 1995, 1996? Why is this not a convenient triable unit when in fact all the other facts that play in the case including the very purpose for relief in the first case demonstrate that all of these, all of the issues here in both these cases stem from the same operative facts. They all stem, even the parties behavior during the history since Appellant knocked on the door in 2004 and has considered the patent family and all the issues that the Appellant has brought as a singular transaction. In 2004, the Appellant comes to RIM talking about patents and about page mail. In 2010, Appellant has told you today that they needed to finish up their due diligence in getting the complaint drafted and bringing their second complaint. In July 2010, the very patents that are identified in the second complaint and the applications are identified in the July 2010 letter. The recitation of the facts of the two complaints are nearly identical. When they attempt to bring, when they file the second complaint, it was at the same time that the parties were negotiating a schedule. It just happened to be also a few months after their common law claims had been dismissed and their damages claims were no longer part of the case. They seek to have the second case consolidated for all discovery purposes in the first as well as consolidated for trial. And then during the course of this appellate process, they sought to consolidate both appeals into one. It's been repeatedly addressed as a singular event of what happened between these parties from 2011 prior where the questions have been what has Mahmoud provided them and how did RIM allegedly misuse them. That was the posture of the case when it was brought to the District Court's attention and the District Court decided on sound res judicata principles that you should have and could have brought these claims at the same time. In fact, the first case is identical in terms of prayers as the second and there's no justification for keeping them separate. Can I ask you the same question that I asked Mr. Talley about the applications? Am I wrong in thinking that the 256 count as to the applications was just premature? As to a 256 claim there certainly are challenges. There's some case law that would make that very challenging to pursue. And it would be I think it's equally clear that you can't have claim preclusion precluding a claim that has not yet accrued. Is that right? Again, for 256 purposes I think there would be some significant case law challenges there but we have to remember that in both of these cases they assert common law claims. And so reading the complaint in its entirety it's arguable that it's the common law like breach of fiduciary duty or conversion that is attaching to those patent applications not just the 256. And so it is right as a matter of res judicata that to the extent there are common law claims that attach to patent applications they are barred by res judicata. Would that extend the declaration of ownership as well? Common law claim for declaration of ownership. I don't have a fair answer for you, Your Honor. Potentially. I'm not sure. I'd have to think through that a little bit more. I don't have a good answer for you right now. Thank you, Your Honor. No further points. Okay. Thank you, Mr. Keller. Well, we've exhausted your time but you can have one minute for the last word if you can talk fast. Then we'll go on to the third case. Thank you, Your Honor for this one minute. And the quickest point I can make is just to offer to Judge Toronto another case where it looked at different products and found no claim preclusion. In the superior case at 700 Fed Third at 1287, I believe, it cites the Acumed case where it didn't find claim preclusion because of separate products. But getting to one point under Mr. Keller's point, this notion that you could have sued earlier this court addressed that and cited two Supreme Court cases in different circumstances. In the superior case, this court relied on the Commissioner of Internal Revenue and in the Stark case, this court relied on the Cromwell case. And both of those decisions pointed out that the mere fact that some suit could have been brought the very first time is not enough to grant claim preclusion. Now getting to the point that they make that all these facts are the same, as I mentioned before, the operative facts underlying a patent and mentorship claim are the claims, the claim elements, the contribution. I think we have that point. And the prayer for relief. We've exhausted the argument. Thank you, Your Honor. I think we understand the issue. I hope we understand the issue. Thank you very much, Your Honor. Okay, thank you both. The case is taken under submission. That concludes the argued pieces for this morning.